UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RALPH CUMMINGS,

                    Plaintiff,

v.                                     3:17-CV-0631
                                     (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                          OF COUNSEL:

LACHMAN, GORTON LAW FIRM        PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.        EMILY M. FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

      This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6.).

      Currently before the Court, in this Social Security action filed by Ralph Cummings

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 9, 10.)  For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1986.  (T. 103.)  He completed the 10th grade.  (T. 207.)  Generally, Plaintiff's alleged disability consists of learning disability, loss of hearing, loss of smell, asthma, mental health impairments, and a "crushed" left foot.  (T. 206.)  His alleged disability onset date is December 27, 2007. (T. 103.)  His date last insured is September 30, 2010.  (*Id.*)  He previously worked as a laborer.  (T. 209.)

### B.    Procedural History

On August 14, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and on October 23, 2013 Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 103.)  Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ").  On August 31, 2015, Plaintiff appeared before the ALJ, Marie Greener.  (T. 32-52.)  On October 20, 2015, ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 15-31.)  On May 23, 2017 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 21-27.)  First, the ALJ found Plaintiff met the insured status

requirements through September 30, 2010 and Plaintiff had not engaged in substantial gainful activity since December 27, 2007.  (T. 21.)  Second, the ALJ found Plaintiff had the severe impairments of lumbar spondylosis without spondylolisthesis.  (*Id.*)  The ALJ determined Plaintiff's loss of hearing, loss of smell, asthma, crushed left foot, a cracked and fused lumbar spine, a learning disability, and other mental health issues were non-severe impairments.  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 23.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work including the ability to lift/carry up to 10 pounds both occasionally and frequently.  (T. 23.)[1]  The ALJ found Plaintiff could stand for two hours out of an eight hour workday, walk for two hours out of an eight hour workday, and sit for six hours out of an eight hour workday.  (*Id.*)  Fifth, the ALJ determined Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 26-27.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes essentially four separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to find Plaintiff's cognitive impairments to be severe and/or include any related limitations in the RFC

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§ 404.1567(a), 416.967(a).

determination.  (Dkt. No. 9 at 8-14 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the

ALJ's mental RFC determination was the product of legal error and not supported by

substantial evidence.  (*Id.* at 14-21, 24-25.)  Third, Plaintiff argues the ALJ's physical

RFC determination was not supported by substantial evidence.  (*Id.* at 21-24.)  Fourth,

and lastly, Plaintiff argues the ALJ's step five determination was not supported by

substantial evidence.  (*Id.* at 25-26.)

### B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues

substantial evidence supported the ALJ's findings regarding Plaintiff's ability to perform

basic mental work activities.  (Dkt. No. 10 at 7-19 [Def.'s Mem. of Law].)  Second,

Defendant argues the ALJ was not required to order an IQ assessment.  (*Id.* at 19-20.)

Third, Defendant argues substantial evidence supported the ALJ's physical RFC

findings, and her findings regarding Plaintiff's ability to sustain work activity.  (*Id.* at 20-

26.)  Fourth, and lastly, Defendant argues the ALJ properly determined Plaintiff was not

disabled at step five.  (*Id.* at 26.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.  The ALJ's Step Two Determination

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c)[2]. Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and

---

[2]    Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

usual work situations; and deal with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b)(3)-(6), 416.921(b)(3)-(6), *see* also SSR 85-15 (S.S.A. 1985).

The plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.*, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a).  Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims,"  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe."  *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'"  *Rosario v. Apfel*, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis."  *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. §§ 404.1523, 416.923 (stating that the ALJ is required to consider the

"combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

At step two the ALJ determined Plaintiff had the severe impairment of lumbar spondylosis without spondylolisthesis. (T. 21.)  The ALJ determined Plaintiff's other physical impairments were non-severe. (T. 22.)  The ALJ further determined Plaintiff's mental impairments, comprised of a learning disorder and depressive disorder, were non-severe. (T. 22-23.)

For the reasons stated herein, the ALJ's step two analysis was proper and any error the ALJ may have made in concluding Plaintiff's mental impairments were non-severe was harmless because the ALJ thoroughly considered the impairments in her RFC analysis and determination.

The ALJ employed the "special technique" in her step two analysis. (T. 22-23.) In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008). As the Second Circuit has explained:

> This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical

findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity [in step four]. *Id.* § 404.1520a(d)(3).

*Kohler,* 546 F.3d at 265-266.

The ALJ determined Plaintiff had mild limitations in the areas of daily living; social functioning; and concentration, persistence, or pace. (T. 22-23.) The ALJ further determined Plaintiff had no episodes of decompensation. (T. 23.) The ALJ noted her analysis at step two was not a RFC assessment. (*Id.*)

In addition to utilizing the "special technique," the ALJ reviewed the objective medical evidence in the record including IQ testing and mental status examinations, as well as Plaintiff's testimony. (T. 22-23.) The ALJ noted Plaintiff's IQ scores were in the 80s and 90s. (T. 22.) Indeed, at age 18, Plaintiff received a verbal IQ score of 90, a performance IQ score of 91, and a full scale IQ score of 90. (T. 267.) Plaintiff's IQ scores fell within the "low average range." (T. 268.) The ALJ ultimately concluded Plaintiff's learning disorder did not have more than a minimal impact on his ability to perform the basic mental work activities. (T. 22.)

Plaintiff asserts the ALJ erred in her conclusion that his cognitive impairment was non-severe. (Dkt. No. 9 at 9-14 [Pl.'s Mem. of Law].) Plaintiff appears to argue the ALJ committed legal error in "refusing" to find his cognitive impairment severe. (*Id.* at 9.) However, in her step two analysis, the ALJ properly applied the correct legal standard in assessing Plaintiff's cognitive impairment. As outlined herein, the ALJ addressed Plaintiff's cognitive impairment, reviewed medical evidence in the record pertaining to that impairment, and applied the "special technique."

9

Plaintiff asserts his IQ scores in the subtests of "working memory" and "processing speed," 69 and 71 respectively, mandate a finding of a severe.  (Dkt. No. 9 at 10 [Pl.'s Mem. of Law]; *see* T. 267.)  In support of his argument, Plaintiff provides generalized descriptions of working memory and processing speed and speculative limitations that Plaintiff may experience.  However, Plaintiff fails to provide any evidence in the record to support his assertion that he actually suffered from work related mental functional limitations due to low scores in these areas.  (*Id.*)  Indeed, although Plaintiff's work activities did not rise to SGA levels, he was able to work during the relevant period of time performing simple manual labor.  (T. 24, 40-41, 303, 305, 426.)  Plaintiff complained of feeling physically tired, but there was no indication that he had any mental difficulties with this type of work.  (T. 303, 305.)  Therefore, despite low scores in working memory and processing speed, Plaintiff fails to provide any evidence showing his low score caused work related functional limitations.

Plaintiff further argues the ALJ erred in her assessment of the evidence in the record.  (Dkt. No. 9 at [Pl.'s Mem. of Law].)  However, any error the ALJ may have made at step two was ultimately harmless.  Here, the ALJ found other impairments severe at step two and the ALJ thoroughly discussed Plaintiff's mental impairments in her step four analysis.  *See Reices-Colon,* 523 F. App'x at 798 (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps).  Therefore, the ALJ applied the proper legal standard in making her step two determination and any error would be harmless because the ALJ analyzed and considered evidence pertaining to Plaintiff's mental impairments at subsequent steps of her analysis.

**B.  The ALJ's RFC Determination**

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c).

**i.)    Mental RFC**

The ALJ ultimately determined Plaintiff's mental impairments did not prevent him from performing the basic mental demands of work.  In her mental RFC analysis, the ALJ thoroughly outlined and discussed the evidence in the record pertaining to Plaintiff's mental symptoms.  The ALJ noted Plaintiff completed the 10th grade with special education services.  (T. 24.)  The ALJ again noted Plaintiff's IQ testing and his reports of limitations due to mental impairments.  (*Id.*)  The ALJ further noted Plaintiff's activities of daily living, including his ability to care for his children, manage his self-care, drive, use public transportation, grocery shop, work on a farm and work as a yard waste remover.  (*Id.*)

Although not expressly stated in her written RFC determination, the ALJ limited Plaintiff to unskilled work.  At step two the ALJ determined Plaintiff's mental impairments did not prevent him from performing the basic mental demands of work.  (T. 22-23.)  In her step four determination, the ALJ relied on Medical-Vocational Rule 201.24.  (T. 27.)  Considering Plaintiff's RFC for a full range of sedentary work, Plaintiff's age, and unskilled work experience, a finding of "not disabled" is directed.  20 C.F.R. Part 404,

Supt. P, App'x 2, § 201.24; *see* SSR 83-10 ("The RFC addressed in a rule [of Appendix 2] establishes the presence of an occupational base that is limited to and includes a full range (all or substantially all) of the unskilled occupations existing at the exertional level in question."). Overall, the evidence in the record, including the medical opinion evidence, supported the ALJ's determination that Plaintiff was capable of performing unskilled work.

The ALJ evaluated the medical opinion evidence in the record pertaining to Plaintiff's mental impairments.  On January 9, 2014, consultative examiner Cheryl Loomis, Ph.D. performed a psychiatric evaluation and provided a medical source statement.  (T. 399-402.)  Dr. Loomis noted on exam Plaintiff was "disheveled, unkempt, and poorly groomed"; his speech was fluent and clear with adequate expressive and receptive language; his thought processes were coherent and goal directed; his affect was "mildly anxious"; his mood was dysthymic; his sensorium was clear; he was oriented; his attention and concentration were "moderately impaired, most likely due to limited intellectual functioning"; his recent and remote memory skills were impaired; and his cognitive functioning appeared to be "below average to borderline with somewhat limited fund of information."  (T. 400-401.)

In a medical source statement, Dr. Loomis opined Plaintiff had no impairment in his ability to learn new tasks, relate adequately with others, or appropriately deal with stress.  (T. 401.)  She opined Plaintiff had a moderate limitation in his ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, and make appropriate decisions.  (*Id.*)  She opined Plaintiff

had marked impairment in his ability to maintain attention and concentration, and perform, complex tasks independently or under supervision.  (*Id.*)

On January 22, 2014, non-examining State agency medical consultant, S. Shapiro, Ph.D. reviewed the record.  (T. 108.)  Dr. Shapiro completed a RFC evaluation as well.  (T. 117-119.)  Dr. Shapiro based his opinion on Dr. Loomis's exam and opinion and Plaintiff activities of daily living report.  (T. 119.)  Dr. Shapiro opined Plaintiff was "not significantly limited" in his ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain and ordinary routine without special supervision; work in coordination with others; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; get along with coworkers or peers; maintain socially appropriate behavior and basic standards of neatness and cleanliness; be aware of normal hazards.  (T. 117-119.)

Dr. Shapiro opined Plaintiff was "moderately limited" in his ability to: understand and remember detailed instructions; carry out detailed instructions; interact appropriately with the general public; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others.  (T. 118-119.)  Dr. Shapiro opined Plaintiff was "markedly limited" in his ability to travel in unfamiliar places or use public transportation.  (T. 119.)  Dr. Shapiro also provided narrative explanation

for his opinions.  He stated Plaintiff would have some difficulty with completed digit tasks, but his memory skills were adequate for day to day tasks.  (T. 118.)  Dr. Shapiro noted the vocational limitations provided by Dr. Loomis were based on a one-time evaluation and were not consistent with mental status examination results.  (T. 119.)  Dr. Shapiro noted "[f]rom a psychiatric vantage, [Plaintiff] has a range of skill sets to allow for vocational activity, secondary to any medical limitations."  (*Id.*)

No treating provider provided a medical source statement pertaining to Plaintiff's mental impairments, either cognitive or psychiatric.  However, the record contained observations by treating sources of Plaintiff's mental status.  Multiple providers noted Plaintiff was alert and oriented.  (T. 289, 291, 293, 295, 296, 297, 299, 301, 303, 315, 317, 319, 369, 430, 432.)  Kara Beth Ross, LPN, noted on examination, Plaintiff had a normal level of consciousness, was alert and oriented, displayed grossly normal intellect, and exhibited normal judgment.  (T. 369.)

The ALJ also took into consideration Plaintiff's activities of daily living.  (T. 26.)  Despite his learning disability, Plaintiff could care for his daughter and step-daughter and care for his personal hygiene.  (T. 22, 217.)  Although Plaintiff asserted he could not use a stove or read recipes, he could prepare microwave meals.  (*Id.*)  He could drive, with assistance of a GPS, and take public transportation.  (T. 22, 218, 401.)  Further, although Plaintiff's work activities did not rise to SGA levels, he was able to work during the relevant period of time performing simple manual labor.  (T. 24, 40-41, 303, 305, 426.)  Plaintiff complained of feeling physically tired, but there was no indication that he had any mental difficulties with this type of work.  (T. 303, 305.)

The ALJ afforded Dr. Shapiro's opinion "some weight." (T. 25.) The ALJ reasoned the doctor's opinion that Plaintiff had a severe mental impairment was inconsistent with Plaintiff's presentation during exams, education records, lack of mental health treatment, and reported activities of daily living. (T. 25-26.) The ALJ afforded Dr. Loomis's opinion "little weight." (T. 26.) The ALJ reasoned her opinion that Plaintiff had no difficulties learning new tasks, relating to others, and dealing with stress was consistent with Plaintiff's presentation during "most" exams, his lack of mental health treatment, and his reported activities of daily living. (*Id.*) The ALJ stated Dr. Loomis's opinion that Plaintiff had a marked limitation in maintaining attention and concentration was inconsistent with Plaintiff's lack of difficulties performing tasks during examinations and his activities of daily living. (*Id.*)[3] The ALJ rejected Dr. Loomis's opinion that Plaintiff had moderate limitations in performing simple tasks, maintaining a regular schedule, and making appropriate decisions reasoning such limitations were inconsistent with the "above discussed records." (*Id.*)

Although the ALJ stated she did not adopt Dr. Loomis's "moderate" limitations in performing simple tasks, maintaining a schedule, and making appropriate decision, such limitations are not inconsistent with an ability to perform unskilled work. *Lawler v. Astrue*, 512 F. App'x 108, 112 (2d Cir. 2013) ("While other sources had stated that Lawler had moderate difficulties in concentration and dealing with others, [. . . ] these opinions were still consistent with a capability to perform unskilled work or [] there were

---

[3]        The ALJ reads Dr. Loomis's opinion as a marked limitation in concentration and attention for all tasks. However, when read in context, it Dr. Loomis opined Plaintiff had a marked limitation in concentration and attention for complex tasks. (T. 401.) A limitation in performing complex tasks is not inconsistent with the ability to perform unskilled work. Further, the ALJ provided ample reasoning and evidence in the record to support her determination that Plaintiff could perform the basic mental demands of unskilled work, including the ability to understand, carryout, and remember simple instructions.

reasons to afford them less weight than others. Moreover, Lawler had previously worked despite these difficulties, and stopped working only because of an injury to his back.").

Plaintiff raises several arguments challenging the ALJ's mental RFC finding. Plaintiff asserts the ALJ should have afforded more weight to Dr. Loomis's opinion and improperly rejected the opinion without a contrary medical opinion.  (Dkt. No. 9 at 15-18 [Pl.'s Mem. of Law].)  However, as stated herein, the ALJ properly assessed Dr. Loomis's opinion and her opinion was ultimately consistent with the ability to perform the basic mental demands of unskilled work.

Plaintiff also asserts the ALJ erred in discounting portions of Dr. Loomis's opinion based on his reported activities of daily living.  (Dkt. No. 9 at 17 [Pl.'s Mem. of Law].) However, the ALJ properly relied on Plaintiff's activities as a factor in her overall evaluation of the medical opinion evidence in and formulating Plaintiff's RFC. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (ALJ relied, in part, on plaintiff's activities of daily living, such as caring for grandchildren and ability to use a computer, in assessing plaintiff's mental RFC); *see Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (ALJ properly considered the plaintiff's varied daily activities in formulating the RFC); *see Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009).  Therefore the ALJ did not err in her reliance on Plaintiff's activities of daily living in formulating her RFC determination.

Plaintiff asserts the ALJ was required to order an IQ assessment.  (Dkt. No. 9 at 19 [Pl.'s Mem. of Law].)  The ALJ was not required to order an additional IQ assessment.  Here, the record contained intelligence testing, school records, and a consultative examination and report.  Therefore, there was sufficient evidence in the

record for the ALJ to make a determination.  *See Janes v. Berryhill*, 710 F. App'x 33 (2d

Cir. 2018) (the ALJ is not required to develop the record any further when the evidence

already presented is adequate for the ALJ to make a determination as to disability)

(internal citations omitted); *see Lawler,* 512 F. App'x at 111 (ALJ properly considered

plaintiff's mental RFC and did not err in failing to calculate a new IQ score because she

was not required to do so).

     Overall, the ALJ did not err as a matter of law in formulating her mental RFC

determination and her determination was supported by substantial evidence.  Although

the ALJ found Plaintiff's mental impairments to be non-severe impairments at step two,

she considered Plaintiff's mental abilities at step four.  In making her determination that

Plaintiff could perform unskilled work the ALJ evaluated and relied on medical opinion

evidence, objective medical observations, and Plaintiff's activities of daily living.

### ii.)    Physical RFC

     In formulating her physical RFC determination, the ALJ relied on the medical

opinion evidence in the record provided by consultative examiner, Justine Magurno,

M.D. and to a lesser extent the medical opinion provided by treating source, Stephen

Federowicz, M.D.  (T. 25.)

     On January 1, 2009, Dr. Magurno examined Plaintiff and provided a medical

source statement.  Dr. Magurno opined Plaintiff had "marked limitations" for walking,

standing and "other [weight bearing] activities."  (T. 397.)  She further opined Plaintiff

should avoid dust, fumes, and other known lung irritants.  (*Id.*)  The ALJ afforded Dr.

Magurno's opinion "great weight."  (T. 25.)  The ALJ concluded her opinion was

consistent with medical imaging, reports of on-going orthopedic pain, presentation

during exams, and treatment history.  (*Id.*)  The ALJ did not adopt Dr. Magurno's opinion

regarding respiratory irritants because the limitation was inconsistent with Plaintiff's

normal respiratory examinations and continued use of cigarettes.  (*Id.*)

Plaintiff's treating source, Dr. Federowicz, completed a "Questionnaire" dated

August 11, 2015.  (T. 407-408.)  He indicated Plaintiff suffered from lumbar L5

spondylolysis.  (T. 407.)  When asked if Plaintiff's condition and/or any side effects of

medication would cause Plaintiff: pain; fatigue; diminished concentration; diminished

work pace; and/or need to rest, Dr. Federowicz answered "yes."  (*Id.*)  When asked

what percentage of the work day Plaintiff's pain, fatigue, diminished concentration or

work pace, or need to rest, would cause Plaintiff to be off task, Dr. Federowicz checked

the box "more than 15% but less than 20%."  (*Id.*)  When asked if Plaintiff's condition

would cause good days and bad days, Dr. Federowicz answered "yes."  (*Id.*)  When

asked whether the bad days would lead to missed time from work, the doctor checked

the box "3 days per month."  (T. 408.)  Dr. Federowicz listed Plaintiff medications as

Percocet and oxycodone and stated side effects included fatigue and loss of

concentration.  (*Id.*)  Dr. Federowicz stated Plaintiff could sit for approximately eight

hours in an eight hour workday; should change positions every thirty minutes; could

stand/walk for four hours out of an eight hour workday; could frequently lift up to five

pound and occasionally lift "5-10 pounds" and "over 10 pounds."  (*Id.*)

The ALJ afforded Dr. Federowicz's opinion "some weight."  (T. 25.)  The ALJ

acknowledged Dr. Federowicz as Plaintiff's treating source and noted the majority of the

doctor's exertional limitations were consistent with Plaintiff's history of degenerative

changes and presentation during exams.  (*Id.*)  The ALJ noted Dr. Federowicz's opinion

that Plaintiff could lift over ten pounds and sit for eight hours was inconsistent with Plaintiff's report of pain.  (*Id.*)  The ALJ did not adopt Dr. Federowicz's opinion Plaintiff needed to alternate positions, would be off task, and would be absent from work.  (*Id.*)  The ALJ reasoned those limitations were inconsistent with Plaintiff's presentation during exams, Plaintiff's lack of attention deficits during exams, his ability to attend regularly scheduled appointments, and statement that he is able to maintain his attention for tasks such as childcare, driving, and watching TV.  (*Id.*)

The ALJ's physical RFC was supported by the opinion of Dr. Magurno, Dr. Federowicz, and Plaintiff's activities of daily living.  Plaintiff asserts the ALJ's opinion Plaintiff can lift and carry up to ten pounds occasionally and frequently, was not supported by substantial evidence.  (Dkt. No. 9 at 21-22 [Pl.'s Mem. of Law].)  Sedentary work requires "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a), 416.967(a).  The ALJ's lifting/carrying limitations were supported by the opinions of both Drs. Magurno and Federowicz as outlined herein.

The ALJ properly discounted portions of Dr. Federowicz's opinion.  The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  Further, the ALJ does not have to adopt the entirety of one opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all

of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

The ALJ provided good reasons for not adopting portions of Dr. Federowicz's opinion. (T. 25.) Indeed, Dr. Federowicz's opinion, that Plaintiff would need to change positions, was inconsistent with Dr. Magurno's opinion regarding Plaintiff's physical capabilities. Further, Dr. Federowicz's opinion, that Plaintiff would be off task and absent, was inconsistent with Dr. Loomis's opinion, observations from providers and Plaintiff's activities of daily living. As stated herein, the ALJ's mental RFC determination was proper and supported by substantial evidence.

Overall, ALJ's physical RFC determination for sedentary work was supported by the medical opinions of Drs. Magurno and Federowicz, as well as Plaintiff's activities of daily living. The ALJ rejected portions of Dr. Federowicz's opinion and provided good reasons for doing so. The ALJ's physical and mental RFC determination was proper and supported by substantial evidence in the record.

### C. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by

referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

Plaintiff argues the ALJ erred in her step five determination because Plaintiff had significant non-exertional impairments and therefore reliance on the Grids was improper and the ALJ should have sought testimony from a vocational expert.  (Dkt. No. 9 at 26 [Pl.'s Mem. of Law].)  Plaintiff's argument is merely repetitive of Plaintiff previous arguments and is unpersuasive since this Court has already concluded that the ALJ did not err in her RFC determination.  *See Wavercak v. Astrue*, 420 F. App'x 91, 95 (2d Cir. 2011) ("[b]ecause we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject [plaintiff's] vocational expert challenge.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

     **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

     **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     May 14, 2018

                                                William B. Mitchell Carter
                                              U.S. Magistrate Judge